ESTATE OF CHARLES B. DUCHARME, DETROIT TRUST COMPANY, BY CONSOLIDATION WITH UNION GUARDIAN TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7055. Promulgated September 10, 1946.

*L. A. Masselink, Esq.,* and *U. George Krapfel, Esq.,* for the petitioner.

*Philip M. Clark, Esq.,* for the respondent.

## OPINION.

Hill, *Judge*: *Issue 1.*—Respondent contends that the terms of the trust instrument in question empowered decedent to distribute income or corpus to any or all the beneficiaries in such proportions and at such times as he might determine in his uncontrolled discretion. Respondent's principal argument, based on this construction of the trust instrument, is that such power constitutes "a power * * * to alter, amend, or revoke" within the meaning of section 811 (d) (2) of the Internal Revenue Code.[1]

Petitioner contends that the trust instrument did not authorize decedent to so distribute income and corpus to any or all the designated beneficiaries. Petitioner further argues that what powers decedent did have were exercisable only in his capacity as trustee.

Thus, the controversy between the parties essentially involves the proper construction of the trust instrument. In the view we take of this issue it is only necessary to consider the first sentence of paragraph 8 of the trust instrument, which provides:

> While the Settlor lives and the Co-Trustee remains mentally competent, the Co-Trustee may direct portions of the principal to be paid or transferred to the Settlor's wife, ISABEL, during her lifetime, but to no other person, as long as she remains the wife of the Settlor. * * *

This power to distribute corpus to the life tenant is not qualified or limited elsewhere in the trust. This power, in our opinion, clearly authorized decedent, in his capacity as cotrustee, to distribute any or all the corpus to his wife and thus diminish or extinguish the remainder interests of his children. Thus, the enjoyment of the remainder interests was subject at decedent's death to "change through the exercise of a power * * * to alter, amend or revoke" within the meaning of section 811 (d) (2). *Commissioner* v. *Holmes' Estate*, 326 U. S.

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(d) REVOCABLE TRANSFERS.—

* * * * * * *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *

480; *Estate of Albert E. Nettleton,* 4 T. C. 987; *Estate of Edward L. Hurd,* 6 T. C. 819. That the power was exercisable in decedent's capacity as trustee is immaterial. *Welch* v. *Terhune,* 126 Fed. (2d) 695; *Union Trust Co. of Pittsburgh* v. *Driscoll,* 138 Fed. (2d) 152; *Estate of Albert E. Nettleton, supra; Estate of Edward L. Hurd, supra.* See also *Commissioner* v. *Holmes' Estate, supra,* footnote 13.

Petitioner, in the alternative, contends that, even if certain interests in the trust are includible in decedent's estate, in any event the wife's life estate should be excluded therefrom. Assuming, without deciding, that the principle of petitioner's contention is sound, we are not furnished with sufficient information to determine the value of such life interest. Petitioner, on brief in its requested findings of fact, states in this connection:

* * * The factor for computing the value of a reversion subject to a life estate of a person born August 6, 1891, the date of birth of Isabel B. DuCharme, as of the date of decedent's death on October 12, 1940, is .47088. (Table A Reg. 105, sec. 81.10). The reversionary interest in said trust subject to the widow's life estate was $37,730.80.

Petitioner apparently fails to recognize that the possibility of the life estate being divested upon the condition of the wife's remarrying must be considered in evaluating such life estate. See *Commissioner* v. *State Street Trust Co.,* 128 Fed. (2d) 618. In *Estate of Pompeo M. Maresi,* 6 T. C. 582; affd., *Commissioner* v. *Maresi,* 156 Fed. (2d) 929, the Casualty Actuarial Society table on the probability of remarriage was introduced into evidence. This table was explained and the propriety of its use was supported by expert testimony. In the instant case no such effort has been made which might have afforded us a basis on which to evaluate the life estate. As was said in *Robinette* v. *Helvering,* 318 U. S. 184:

* * * The petitioner does not refer us to any recognized method by which it would be possible to determine the value of such a contingent reversionary remainder. * * *

See also *Humes* v. *United States,* 276 U. S. 487. Under these circumstances it is impossible for us to evaluate the life estate that petitioner would have us exclude from decedent's estate. We are, therefore, unable to permit any exclusion and must hold that the entire value of the trust is includible in decedent's estate under section 811 (d) (2). This disposition of the question makes it unnecessary to consider respondent's further arguments based on the possibility of reverter and decedent's power to approve amendments to the trust requested by his wife.

*Issue 2.*—Respondent contends that the basis for evaluating the property to be included in decedent's estate as having passed under the power of appointment is the property in trust at decedent's death. Petitioner contends, on the other hand, that such basis should be the

property in trust when the trust terminated. Under respondent's method of computation the trust property which was sold after decedent's death is included at the net sale price. Under petitioner's computation the value of such property is excluded altogether, since it was not in the trust at its termination. Both parties give recognition to the estate intervening between decedent's death and the trust's termination.

Petitioner, in justifying its computation, bases its argument on the meaning of the word "passing" as used in section 811 (f) of the code.[2] This section provides, as here material, that:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *

* * * * * * *

(f) * * * To the extent of any property *passing* under a general power of appointment exercised by the decedent (1) by will * * *. [Emphasis supplied.]

Petitioner argues that, since decedent was given by his mother's trust power to appoint one-half of the property constituting the trust at its termination, only such property can be considered as having *passed* within the meaning of the quoted section. We think this argument involves a misconception of the meaning of the statute.

Petitioner's interpretation of "passing" assumes that that word refers to the event of passing into the possession and enjoyment of the appointees. Such an assumption would require that the process of evaluation for estate tax purposes be postponed until the appointed property ultimately passed into the possession of the designated appointee. Obviously, the statute has no such meaning. Petitioner's construction also ignores the statutory language which marks decedent's death as the time of evaluation.

Petitioner's contention fails to recognize that the word "passing," as used in the statute, refers to property passing at decedent's death rather than to the property which actually may pass into the possession and enjoyment of the appointee as determined by subsequent events. In the instant case property, in the nature of an executory interest, passed at decedent's death under the power of appointment. It is true that the executory interest so passed was subject to powers of encroachment. The trustee was authorized and did distribute amounts of corpus subsequent to decedent's death which diminished the value of the property which the appointees would receive. But the fact that the interest which passed under the power of appointment was executory and subject to powers of encroachment which might and did diminish its ultimate quantum does not prevent the

---

[2] The amendment of section 811 (f) of the code by section 403 (a) of the Revenue Act of 1942, effective as of October 22, 1942, which omits any reference to the element of "passing," applies, with certain exceptions not here material, only to estates of decedents dying on or after October 22, 1942. See Regulations 105, sec. 81.24 (a).

passing of such interest at decedent's death. See A. L. I., Restatement of the Law of Property, Future Interests, vol. 3, § 276.

Petitioner argues that events subsequent to the donee's testamentary exercise of a power can be recognized in determining whether property passed under a power of appointment, citing *Helvering* v. *Grinnell*, 294 U. S. 153, and kindred cases. These cases involved situations wherein the appointees renounced their right to take under the power of appointment, and elected to take by some other title. The *Grinnell* case does not support the petitioner's contention that "passing" as used in the statute refers to passing into possession and enjoyment. The subsequent events recognized in the *Grinnell* case are those which affected the validity of the power's exercise rather than the quantum of property received by the appointees. Events destroying the effective exercise of a power of appointment must be recognized, since an ineffective exercise passes nothing. That the *Grinnell* case turned on the effectiveness of the exercise of the power rather than on the quantum of the property passing is clear from the following language of Justice Frankfurter in *Rogers' Estate* v. *Helvering*, 320 U. S. 410:

> Nothing that was decided or said in *Helvering* v. *Grinnell*, 294 U. S. 153, stands in the way of this conclusion. Where a donee of a power merely echoes the limitations over upon default of appointment he may well be deemed *not to have exercised his power*, and therefore not have passed any property under such a power. * * * [Italics supplied.]

Both parties argue extensively on brief with respect to the conclusiveness of the state court decree. In the view we take of the instant case it is unnecessary to consider the conclusiveness of the state court's decree. As here material, the state court decided that the power of appointment exercised by decedent related only to such property as remained in the trust at its termination and did not restrict the trustee's power to distribute the trust corpus. Assuming, for the sake of discussion, that the state court's decree is conclusive, as petitioner contends, we can find no inconsistency between its determination and our conclusions here. The state court has said that the power of appointment relates only to the property remaining in the trust at its termination. Under section 811 (f) of the code, we must determine the value of the property passing under such power at the time of decedent's death. To do this we must evaluate the executory interest which passed at decedent's death and not the value of the property which ultimately passed into the possession and enjoyment of the appointees. We see no conflict between our conclusion and that of the state court in this respect. The state court further decided that the power of appointment did not restrict the trustee's power to distribute trust corpus after decedent's death. Again assuming, without deciding, that such decision is conclusive, we think admitting the validity of such power to invade or encroach merely introduces an element in the

nature of a condition subsequent which, in the tax context confronting us, should if possible be given recognition as a factor in evaluating the executory interest which passed at decedent's death. However, we think it is clear that it is as impossible to evaluate the possibility that the trustee might encroach as it would be to attempt to evaluate the possibility that someone might make a contribution to corpus. As we said in *Estate of William Walker*, 4 T. C. 390, 399, involving a similar problem:

* * * Passing the question whether this would be an allowable diminution of decedent's reversion, it seems unquestionable that in any event the contingencies involved are in their nature incapable of actuarial computation and hence that they have no place in the calculation of value. *Robinette* v. *Helvering*, 318 U. S. 184, * * *

For the above reasons we are of the opinion, even assuming in petitioner's favor that the state court's decree is conclusive, that the state court's decision is not inconsistent with our conclusions.

It is our conclusion that property in the nature of an executory interest passed under the power of appointment at decedent's death and that the value of such interest is includible in decedent's gross estate under section 811 (f). We further conclude that the value of such interest should be based on the property in trust at decedent's death, with proper allowances made on account of the estate intervening between decedent's death and the trust's termination. As indicated above, we consider the trustee's power to sell and distribute corpus impossible of evaluation. Since respondent's determination is in accordance with the above conclusions, we hold such determination correct.

Reviewed by the Court.

*Decision will be entered under Rule 50.*