## HAUPTFUHRER'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10570.

United States Court of Appeals Third Circuit.

Argued Jan. 25, 1952.

Decided April 11, 1952.

Rehearing Denied May 8, 1952.

Before KALODNER and STALEY, Circuit Judges, and STEWART, District Judge.

STALEY, Circuit Judge.

The issue before us is whether the value of the remainder interests in three inter vivos trusts created by the decedent in 1933 are includible in decedent's gross estate under Section 811(d) (2) of the Internal Revenue Code, 26 U.S.C. § 811(d) (2).

Three separate trusts were created by decedent for his three sons, George, Henry, and Albert. The settlor designated his three sons and a corporate trustee as trustees for each of the three trusts and reserved, during his life, the power to direct and control the trustees in the exercise of their duties. The terms of the trusts are identical except that each is for the benefit of a different son. Let us consider, for example, the pertinent portions of the trust for George.[1] The trustes are directed to

Henry S. Drinker, Philadelphia, Pa. (James J. Cloran, Frederick E. S. Morrison, and Drinker Biddle & Reath, all of Philadelphia, Pa., on the brief), for petitioners.

L. W. Post, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

[1]. "In Trust, to pay and distribute the net income from the trust estate at least Quarter-yearly unto George J. Hauptfuhrer, during his life; and

"In Trust, during the life of George J. Hauptfuhrer, to pay and distribute unto him such part or parts of the whole of the principal of the trust estate as he shall, by writing lodged with the Trustees, request, provided such request be in writing approved by the Settlor during his lifetime, and after the decease of the Settlor by the Trustees, or a majority of them, and to the extent of such distributions of principal the interests of all persons therein shall be thereby terminated and ended; and

"In Trust, from and after the death of George J. Hauptfuhrer, then to pay and distribute the net income from the then remaining trust estate, if any, and the then remaining principal thereof unto and among such person or persons related to George J. Hauptfuhrer by blood or marriage and/or for such charities or religious purposes as George J. Hauptfuhrer, by writing lodged with the Trustees or by last will and testament, shall nominate and appoint, in such manner, at such times and for such interests as he shall determine; and any part of the trust estate, both income and principal which shall not be or become subject to distribution under the power aforesaid shall be paid and distributed upon the death of George J. Hauptfuhrer, unto his then surviving children and issue, children and issue to take by representation, per stirpes, the deceased parent's share, any income payable to minors to be accumulated or applied during minority to the maintenance, education and support of such minors under the subsequent provisions hereof, and the principal of the share of each minor, together with any accumulated income, to be paid and distributed unto such minor upon attaining full age; and in the event of the failure of the exercise of said power or of surviving children and issue as aforesaid, then any remaining principal or income of the trust estate shall be paid and distributed unto and among the then surviving next of kin of the Settlor and in accordance with the intestate laws of the Commonwealth of Pennsylvania in force and in effect at the death of the Settlor; and the provisions hereof shall include children and issue living on the date hereof or born subsequent thereto and within the term of the trust hereof; * * *.

"In Trust, anything hereinbefore to the contrary notwithstanding, if by reason of misfortune, lack of income or other cause, the share of principal and/or income payable to any person hereunder shall not be sufficient, in the opinion of the Trustees, for the proper care, maintenance and education and support of such person, then the Trustees shall be

pay the net income to George, subject to a spendthrift provision. George is given a power to appoint the remainder either inter vivos or by will to persons related to him by blood or marriage and for any charitable or religious purpose. In default of appointment, the remainder is to be distributed to the children and issue of George surviving him. During the life of the settlor, all or part of the corpus is distributable to George upon the consent of the settlor. After the death of the settlor, the corpus can be invaded with the approval of a majority of the trustees. Further, the trustees are entitled to invade the principal whenever they deem George's share of the income to be insufficient for proper care, maintenance, and education. Finally, the trust instrument expressly provides that it is irrevocable.

The Commissioner determined that the value of the remainder interest of the three trusts should be included in the decedent's gross estate under Section 811(d) (2) of the Internal Revenue Code, 26 U.S.C. § 811 (d) (2). The Tax Court upheld the Commissioner, and the estate has appealed.

The relevant provisions of Section 811 of the Internal Revenue Code are as follows:

"§ 811. Gross estate

> entitled, in their sole and absolute discretion, to apply out of the principal from which such person is receiving or entitled to receive income, or out of the residuary trust estate, such part or parts thereof as the Trustees shall determine, and to the extent of such application the interest of all persons therein shall be thereby diminished; * * *.
>
> "It is hereby expressly stipulated and agreed that all payments of income and/or principal payable to any person hereunder shall, to the fullest extent permitted by law, be free and clear of his or her debts, contracts, engagements, alienations and anticipations, and that the same shall not be liable to any levy, attachment, execution or sequestration.
> * * * * * *
> "It is hereby expressly stipulated and agreed that during the life of the Settlor the Settlor shall be entitled to direct and control the exercise by the Trustees hereunder of the power and authority herein conferred upon the Trustees, * * *

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
* * * * * *
"(d) Revocable transfers
* * * * * *
"(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death * * *."

We think this case is controlled by the decision of the Supreme Court in Commissioner v. Estate of Holmes, 1946, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228, and our decision in Mellon v. Driscoll, 3 Cir., 1941, 117 F.2d 477, certiorari denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536.[2] In the Holmes case, the settlor, by a single trust

> "The Settlor hereby expressly agrees that the trust created hereby is irrevocable, and that the trust estate and all rights, powers and authority hereunder vested in the Trustees, and their successors, and/or the survivor or survivors of them, upon the date hereof without any right being reserved in the Settlor to receive any principal or income from the trust estate, or to alter, amend or modify any rights or interest therein; and the Settlor hereby acknowledges this trust and the said assignment and transfer to be irrevocable and to be vested as aforesaid."

2. See also Thorp's Estate v. Commissioner, 3 Cir.1947, 164 F.2d 966, certiorari denied 333 U.S. 843, 68 S.Ct. 660, 92 L. Ed. 1126; Loughridge's Estate v. Commissioner, 10 Cir.1950, 183 F.2d 294, certiorari denied 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609; Commissioner v. Newbold's Estate, 2 Cir.1946, 158 F.2d 694; Commissioner v. Hofheimer's Estate, 2 Cir.1945, 149 F.2d 733.

indenture, created for each of his three sons an irrevocable trust, which was to continue for 15 years unless terminated earlier by the settlor. Each received a life interest in one-third of the fund. On termination of the trust, each son, if alive, was to receive one-third of the corpus. The share of any deceased son, however, was to be paid to his issue, and on failure of issue to the other two sons, or their surviving issue. The settlor reserved to himself during his lifetime the right to terminate all trusts and distribute the principal to the beneficiaries then entitled to receive it, but he retained no power to revest in himself or his estate any portion of the income or principal. Each son's enjoyment of the remainder was uncertain in that it depended on his surviving until the termination of the trust. The settlor's reserved power of termination was thus a power whereby the settlor could at any time not only accelerate the time of enjoyment, but could transform an otherwise uncertain possibility of enjoyment into a certainty. The court held, 326 U.S. at page 487, 66 S.Ct. at page 260, "A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811(d) (2) requires in order to avoid the tax."

The Holmes case makes it perfectly clear that the remainder interests here involved fall within Section 811 (d) (2). In fact, taxpayers' argument here is weaker than that contended for in the Holmes case. In that case, even if the settlor never invaded the corpus, each of the sons would have come into the enjoyment of the remainder, if he lived long enough. In the instant case, however, the sons could never come into the enjoyment of the remainders during the life of the settlor unless the latter exercised his power of termination. And enjoyment of the remainders after the settlor's death depended on the consent of the majority of the trustees. Thus, after the settlor's death, one of the three sons plus the corporate trustee could have vetoed the attempts of two of the sons to invade their share of the principal. Each of the sons had only a special power to appoint the remainder to relatives by blood or marriage or for any charitable purpose. The powers granted were thus substantially different from general powers of appointment. See Restatement, Property, § 320. In fact, we have held that even where the life beneficiary is given a general testamentary power of appointment, the reserved power in the settlor to terminate the trust and distribute the corpus to the life beneficiaries renders the remainder taxable under Section 811 (d) (2). Mellon v. Driscoll, supra.

The taxpayers urge upon us the contention, however, that the instant case is governed by Helvering v. Helmholz, 1935, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76. The Supreme Court there held that a provision in the trust indenture that the trust could be terminated with the consent of the then beneficiaries was not a power to alter, amend, or revoke within the contemplation of Section 302(d) of the Internal Revenue Act of 1926 (the predecessor of Section 811 (d) of the Internal Revenue Code) because it added nothing to the powers possessed by the beneficiaries under the applicable state law. The rule of this case has been incorporated into Treasury Regulation 105, § 81.20, the pertinent portion of which states: "The provisions of this section do not apply to a transfer if the power may be exercised only with the consent of all parties having an interest, vested or contingent, in the transferred property, and if the power adds nothing to the rights of the parties as conferred by the applicable local law."

It is admitted that under Pennsylvania law a trust such as this can be terminated only with the joint consent of the settlor and all beneficiaries, including contingent remaindermen. See In re Bowers' Trust Estate, 1943, 346 Pa. 85, 29 A.2d 519, 520. Petitioners assert, however, that under the provisions of the deed, it was within the power of the life tenants, without resort to the settlor's power of termination, to have obtained the principal of the fund and thus eliminate the takers in default of appointment; it could be accomplished in the following manner. Each of the sons could appoint the remainder over which he had

a power of appointment to one of his brothers; thus George could appoint Henry, Henry could appoint Albert, and Albert could appoint George. Each would agree that he would exchange the remainder interest thus received for the remainder in the trust of which he was life tenant. Each son would then have a life estate on spendthrift trust, with a remainder in himself. But, petitioners argue that under Pennsylvania law, and independent of any provisions of the trusts, the settlor can waive the spendthrift provisions and thus cause the trust to be terminated. Since each of the trusts could be terminated by the consent of the settlor and the respective son without resort to the reserved power of termination clause in the trust indenture, we are urged to hold that the termination provision is not such a power to "alter, amend, or revoke" within the meaning of Section 811(d) (2) in that it adds nothing to the rights of the parties under Pennsylvania law.

While we admire the ingenuity of counsel's argument, its merit is at most superficial. Each brother had no power to appoint to himself. Had he attempted to exercise his power of appointment directly in his own favor, the appointment would have been ineffective. See Restatement, Property, § 351. Similarly, each of the brothers could not accomplish indirectly what he could not do directly. George's appointment to Henry on the condition that Henry reconvey the interest to George is as obvious an instance of a "fraud on a power" as can be imagined. See Restatement, Property, §§ 352, 353, 354, 339; 72 C.J.S., Powers, § 45(a). The consent of the settlor to such a scheme does not convert otherwise ineffective appointments into valid ones. Having created interests in at least some of the objects of the appointment[3] and remainders in the takers on default, the settlor could not, in the absence of a reserved power of termination, extinguish

3. See Restatement, Trusts, § 121.

4. The Tax Court buttressed its opinion by holding that the power of the trustees to invade principal for the proper care, maintenance, and education of the life

these interests. See In re Bowers' Trust Estate, supra; Restatement, Trusts, § 338 (comment f); § 340 (comment d); McCreary's Estate v. Pitts, 354 Pa. 347, 47 A.2d 235 (Orphans' Ct., Phila. Co.), affirmed per curiam 1946, 354 Pa. 355, 47 A.2d 240.

The reserved power of termination was thus not surplusage; it was a vital part of the trust indentures. As we stated in Thorp's Estate v. Commissioner, 3 Cir. 1947, 164 F.2d 966, 969, certiorari denied 333 U.S. 843, 68 S.Ct. 660, 92 L.Ed. 1126, the reserved power was a means by which the enjoyment of the property by the settlor's grandchildren was not placed beyond his recall until the power was extinguished by his death.[4]

The judgment of the Tax Court will be affirmed.

beneficiaries, together with the settlor's power to direct the action of the trustees, likewise constituted a power to "alter, amend, or revoke" within the meaning of Section 811(d) (2). It is not necessary for us to pass upon this point.